DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Rankin County wherein Ruby Edwards Brown, appellant, filed an objection to a petition for authority to sell real estate, to pay debts and expenses, distribute remaining proceeds and for a final discharge of administratrix in the estate of Minnie Daniels Lee, deceased. Brown was the only heir[1] to contest the sale of approximately 175 acres of land located in Rankin County, Mississippi. At the conclusion of the hearing, the chancellor ordered the 175 acres sold to pay court costs, probated claims, ad valorem taxes, attorneys’ fees, and the ad-ministratrix’s fee. From this decree Brown appeals. We reverse.
The estate of Minnie Daniels Lee, deceased, was opened in 1973. On November 6, 1980, Bettie McAfee, as administratrix with will annexed of Minnie Daniels Lee, and individually, petitioned the Chancery Court of Rankin County for authority to sell real estate to pay debts, fees and expenses, distribute remaining proceeds and for final discharge of administratrix. The property sought to be sold consisted of a 15-acre tract of land and a 160-acre tract of land, both of which were located in Rankin County, Mississippi. The personal property *1062 of decedent was specifically bequeathed to Alice Williams, who also prevailed in another lawsuit which entitled her to 120 acres of land owned by the decedent. Decedent also apparently owned some real property in Chicago.
A decree pro confesso to the petition was entered against thirty-seven heirs at law of decedent. Appellant was the only heir at law to file an answer to the petition of the administratrix objecting to the sale of the real property.
After hearing legal arguments advanced by the attorneys, the chancellor found a valid contract existed between Martin and Martin, attorneys at law, and the heirs of decedent who executed these contracts. The chancellor further approved the payment of all claims filed and ordered that all fees, costs and expenses be deducted from the interests of all heirs or devisees proportionate to their respective interests except for attorneys’ fees which would only be paid from the interests of the heirs with whom the contracts were executed. The chancellor further ordered a hearing to show why a part of the realty should not be sold in order to satisfy the payment of debts, expenses and fees to be paid from the proceeds of the estate.
At the hearing to determine whether all or part of the 175 acres of realty should be sold, the only testimony came from George Dan Martin. Martin, an attorney and real estate broker, testified the 15-acre tract had a value of $800 to $1000 per acre maximum. Martin appraised the 160-acre tract at $500 per acre, evidently because of its isolation from public roads and public services. According to Martin, the expenses involved in attempting to partite the 160-acre tract with fractional interest from a .285 per cent interest to a 9 per cent interest would be totally impracticable from an economic standpoint. Martin asserted the proceeds from the sale of the 15-acre tract alone would be insufficient to satisfy the debts of the estate. Although Martin admitted it would be theoretically possible to dispose of the 160-acre tract and not the 15-acre tract to satisfy the debts of the estate, he asserted it would be totally impractical to attempt to partite 15 acres of land among 37 heirs. Martin recommended it would be less expensive on the estate and the heirs to sell all the property.
The chancellor thereafter entered a final decree ordering the property sold at a public auction and the proceeds therefrom used to pay the court costs of handling the estate, the probated claims, all past ad valo-rem taxes paid by the heirs at law, attorneys’ fees, except such a fee was not to be assessed against the interest of appellant, and the administratrix’s fee. The remaining balance was to be paid to the heirs at law in an amount equal to their percentage interests.
I. Did the chancellor err in ordering a sale of the property to satisfy the debts of the estate?
Mississippi Code Annotated section 91-7-191 (1972) provides as follows:
When an executor or administrator shall discover that the personal property will not be sufficient to pay the debts and expenses, he may file a petition in the chancery court for the sale of the land of the deceased, or so much of it as may be necessary, and exhibit to the court a true account of the personal estate and debts due from the deceased, and the expenses and a description of the land to be sold.
Section 91-7-199 (1972) deals with the hearing and decree concerning a petition to sell land upon the insufficiency of personalty. It provides:
The court, after service of summons or proof of publication, shall hear and examine the allegations and evidence in support of the petition and the objections to and evidence against it, if any. If on such hearing the court be satisfied that the personal estate is insufficient to pay the debts of the deceased and that the land ought to be sold for that purpose, it may make a decree for the sale of a part or the whole of the land; and when a part only is decreed to be sold, the decree shall specify what part. If the real estate be so situated that a part cannot be sold without manifest prejudice to the *1063 heirs or devisees, the court may decree that the whole shall be sold; and the overplus arising from such sale, after the payment of debts and expenses, shall be distributed amongst the heirs according to the law of descents, or amongst the devisees according to the will. The heir or devisee whose lands shall be sold may compel all others holding or claiming under such intestate or testator to contribute in proportion to their respective interests, so as to equalize the burden of the loss.
The petition and attached exhibits alleged there was no personal property in the estate except for a “Steck” piano, and that no receipts or disbursements had been made. The petition further averred that the only probated claims consisted of a $58.09 prescription and medical supply bill and a $1,096.12 claim for funeral expenses which the administratrix denied should be paid from the estate. The petition alleged the heirs at law had expended their own personal funds to pay the ad valorem taxes upon the real property of decedent and there were no monies for attorney’s fees or an administratrix’s fee. The petition then prayed for a sale of the real property to dispose of the debts of the estate.
The petition did not specifically allege that the personal property was insufficient to pay the debts of the estate. In McWil-liams v. Estate of Brown, 183 So.2d 820 (Miss.1966), this Court stated:
In these proceedings the court is divesting title to the lands out of the legatees or heirs and vesting same in the executor or administrator, and compliance with the statute is necessary to effect such dives-ture.
The petition is to be for the sale of the land of the deceased, “or so much of it as may be necessary”, and there shall be exhibited to the court a true account of the personal estate and the debts due and expenses, together with a “description of the land to be sold.”
The petition did not comply.
The order did not adjudicate, as provided by section 592, supra, that the personal estate was insufficient to pay the debts and that the land ought to be sold for that purpose, nor did it make a decree for the sale of a part or the whole of the land and described no land, title to which was being divested from the legatees or heirs. (183 So.2d at 822)
Had appellant interposed a demurrer to the petition, the demurrer should have been sustained. However, we need not decide whether the petition’s failure to comply with section 91-7-191 was cured by the final decree because appellee failed to meet her burden of proof on the issue of whether an order for the sale of the real property was necessary in order to discharge the debts and expenses of the estate.
Appellee, through her petition, alleged a sale of the realty was necessary in order to satisfy the debts and expenses of the estate. However, the petition only alleged the actual amount owing on two probated claims. The first claim was for a prescription and medical supply bill which totaled $58.09, while the second claim was for burial expenses in the amount of $1,096.12. The latter claim was denied owing by the ad-ministratrix. The debts and expenses that the appellee claimed consisted of attorneys’ fees, court costs, the administration of the estate, ad valorem taxes on realty and ad-ministratrix’s fee. There was absolutely no documentation or proof offered as to the amounts due or an estimation thereof. In fact, appellee contended that these amounts could not be determined until the estate is finally closed and litigation ended. Indeed, some of the alleged debts, such as attorneys’ fees for the heirs, may or may not be debts of the estate. Furthermore, it was absolutely necessary to establish the amount of the debts prior to determining what amount of realty, if any, need be sold to satisfy them.
The decree ordering the sale of real estate is clearly without legal precedent in the absence of proof of the debts against the estate so as to justify the chancellor’s divesting the title to the lands out of the legatees or heirs and vesting the same in the administratrix. It further assumes *1064 there must be a partition of the land as between the heirs, which the appellee contended could not be economically done. This contention presupposes that there must be a partition of the land, which may or may not be done in a separate action at the election of the heirs.
Although we can only speculate that court costs and attorneys’ fees would be substantial due to the length of time that had elapsed since the estate was opened in 1973 and the amount of litigation involved, the absence of an account of the debts due and expenses involved left the chancellor in the dark insofar as determining whether the realty should be sold and if so, how much. The only evidence adduced by the appellee involved the value of land sought to be sold and that it could not be economically partited. In the absence of the amount of court costs, attorneys’ fees, ad valorem taxes and fees for the administra-trix involved, it was impossible for the chancellor to make a determination that any or all of the real estate should be sold. McWilliams, supra.
The chancellor was manifestly wrong in ordering a sale of the real property in the absence of proof as to the debts due and expenses of the estate. Since this cause must be reversed, we decline to reach the remaining assignments of error.
REVERSED AND REMANDED.
PATTERSON, C.J., SUGG and WALKER; P.JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.

. There was a total of thirty-seven heirs at law to the estate of Minnie Daniels Lee, deceased.